CHARLES SILVER and MARCIA SILVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RespondentSilver v. CommissionerDocket No. 6038-80.United States Tax CourtT.C. Memo 1982-326; 1982 Tax Ct. Memo LEXIS 426; 44 T.C.M. (CCH) 92; T.C.M. (RIA) 82326; June 9, 1982. Walter G. Schwartz, for the petitioners. Charlotte A. Mitchell, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the joint Federal income tax of Charles Silver and Marcia J. Silver (petitioners) in the amount of $ 14,999 for the year 1976. The issue for decision is whether petitioners paid $ 30,000 during 1976 to Kachuck Enterprises, Inc., for investment advisory fees. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Charles and Marcia J. Silver, husband and wife, who resided in San Francisco, California, at the*427 time of filing their petition in this case, filed a joint Federal income tax return for the year 1976 with the Internal Revenue Service Center in Fresno, California. In 1976 Dr. Silver was a self-employed physician. Petitioners were cash basis calendar year taxpayers. During 1976, petitioners held investment interests in several partnerships. For a number of years beginning in 1965 or 1966, petitioners retained Kachuck Enterprises, Inc. (Kachuck), for investment advice and the actual management of their investments. Kachuck is located in Santa Ana, California. Israel J. Kachuck is the president and he and his wife are the sole shareholders of Kachuck. The company reports its income on the cash basis method of accounting and has adopted a fiscal year ending March 31. Mr. Kachuck has known petitioners approximately 29 years and he is related to them indirectly through his wife. Mr. Kachuck is also the trustee of trusts that have been established for petitioners' children. Mr. Kachuck is a licensed real estate broker, general contractor, general insurance agent, and a life insurance agent. He has no formal training in accounting but he prepared all of the partnership tax*428 returns for all of the enterprises in which petitioners were involved in 1976. Mr. Kachuck was compensated for his investment advisory services by fees from his clients. The agreement with petitioners under which he would render services during 1976 was oral. The fee charged petitioners was $ 30,000 per year and in years other than 1976 petitioners had paid by check. Mr. Kachuck acted as an investment advisor for clients other than petitioners during 1976. Mr. Kachuck had organized and was a director of the Santiago Bank in Tuston, California. Petitioners executed an "optional advance note" dated December 31, 1975, which was due on demand on December 30, 1976. The note provided that interest at the rate of 8 percent per annum would be charged for any advances. The note also stated that "Advances hereunder not to exceed $ 64,000.00 may be made by Bank at the oral or written request of Charles Silver or Jane Silver or Israel J. Kachuck."1 There were numerous advances and payments under the note. The following schedule shows the amounts and dates of the advances, payments, interest paid, and unpaid balance on this note: *429 UnpaidDateAdvancePaymentInt. Pd. toBalance12-31-75$ 64,000$ 64,000.002-4-76$ 50,000.001514,000.004-14-767,000921,000.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,000.00711,000.004-30-764,331.113-30-76$ 668.89176,668.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,331726,000.005-24-763,0001029,000.006-3-7611,000740,000.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,000.00420,000.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,0001642,000.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,00061,000.006-25-762,00063,000.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,000.0043,000.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,00063,000.007-20-766-30-76465.1963,000.0011-17-761,00064,000.0012-8-769-30-761,288.0064,000.001-4-7764,000.0012-31-761,308.44The note is stamped "PAID JAN 4 - 1976." 2 Pursuant to the authorization in the note, Mr. Kachuck requested all of the advances made on the note through phone calls to the bank and made all the repayments. The "disbursements journal" of Kachuck shows that it issued check no. 430 dated January 3, 1977, for $ 64,000 with the notation under "Name" being "Charles Silver/Santiago Bank. *430 " On February 4, 1976, the note shows a payment to the bank by Mr. Kachuck. This payment was made up of $ 29,000 from Kachuck with the balance of $ 21,000 from petitioners' own funds received in a distribution from an avocado partnership. Mr. Kachuck paid down the loan so that petitioners would be indebted to his corporation rather than the bank. The corporation was then entitled to collect the 8 percent interest due on the balance of the loan up to $ 29,000. This debt was later repaid to Kachuck through subsequent withdrawals of funds under the bank note by Mr. Kachuck during 1976. Kachuck's bank statements indicate deposits of, among others, $ 7,000, $ 3,000, and $ 20,000 on April 14, May 24, and July 16, 1976, respectively. In the "gray ledger book" of Kachuck, there is an undated notation in pencil between two ink notations under date of "4-8" and "4-18" of "Santiago Bank Charles Silver Services" beside a $ 7,000 entry. In the "yellow ledger sheets" of Kachuck beside a date of "5-24" on the back of a page beside "Charles Silver (Santiago*431 Bk) F-2" appears in pencil the amount of $ 3,000, and as one of two entries in pencil on the back of another page appears "Charles Silver (Services)" beside an amount of $ 20,000 and a date of "7-19." There were no other similar notations beside any of the other entries in either the "gray ledger book" or the "yellow ledger sheets" indicating that these amounts were received for services rendered. However, there were other entries which clearly indicated that the amount received was in return for services. In a letter dated December 15, 1976, addressed to petitioners, Mr. Kachuck stated that the amount due for services for the year was $ 30,000. The letter also stated that the amount due could either be paid by check or by signing the enclosed personal note for the total amount due. The attached note was not executed. Mr. Kachuck had written a similar letter to petitioners dated December 20, 1975, requesting payment of the fee of $ 30,000. This type of letter was regarded by Mr. Kachuck as the official invoice for services rendered which was sent to clients every year. In a letter dated January 15, 1977, to petitioners, Mr. Kachuck stated as follows: This is to advise you*432 of the status of the cash accounts that I have been managing for you: Fallbrook Venture One - Avocado Grove. As your share in the distribution from this Limited Partnership, on January 20, 1976 I credited your account with the sum of $ 21,053.00. Santiago Bank - Optional Advance Loan Account. As of January 1, 1976 you owed Santiago Bank $ 64,000.00. As per our agreement it was understood that Kachuck Enterprises, Inc. in order to increase its short term yield on surplus corporate funds, would be permitted to temporarily reduce this loan amount. You, of course, would remain liable for these amounts and be charged 8.0% interest on your actual balances. I have calculated the interest due from you, for the year 1976, on this loan account as follows: $ 64,000.00 12-31-75 to 1-20-76$   284.44 (21,053.00)Loan reduced by Fallbrook VentureDistribution$ 42,947.00 1-20-76 to 12-21-76$ 3,292.61Total Interest Paid in 1976$ 3,577.05I have enclosed a copy of this note for your files. Kachuck Enterprises, Inc. - Personal Loan to Charles & Jane Silver. As of January 1, 1977 you owed Kachuck Enterprises, Inc. $ 30,000.00 plus*433 $ 3,577.05 for interest paid on your behalf to Santiago Bank. A summary of your loan account is therefore as follows: Santiago Bank$ 64,000.00Kachuck Enterprises, Inc.$ 12,524.05Loan$ 30,000.00 Fallbrook Credit(21,053.00)Interest Charge3,577.05 $ 12,524.05 If you have any questions, please do not hesitate to call me right away. Sincerely, [signed] Israel J. Kachuck In the calendar year 1976, petitioners deducted $ 30,000 as "investment advisory fees & services" paid to Kachuck. In his notice of deficiency, respondent determined that the deduction was not allowable "as it has not been established that any amount was paid or incurred for an ordinary and necessary business expense or for the production or preservation of income." OPINION At trial, respondent conceded that if properly substantiated, the claimed deduction was allowable under either section 162 3 or section 212. Thus, the only question presented is whether petitioners have established that the stated amount was, in fact, paid in 1976. In this regard, the burden of proof is upon petitioners. .*434 Petitioners contend that the evidence establishes that they paid the $ 30,000 fee in 1976. The payment was made, according to petitioners, when Mr. Kachuck exercised his power under the option advance note by withdrawing $ 7,000 on April 14, $ 3,000 on May 24, and $ 20,000 on July 16, 1976. These payments for services were confirmed, according to petitioners, by the fact that these amounts were deposited in Kachuck's bank account and on its ledger sheet, and that two of the three entries were accompanied by a notation "Charles Silver Services." Furthermore, petitioners point out that $ 30,000 was included in Kachuck's income for the fiscal year ending March 31, 1977. Based on all of the evidence presented, we conclude that petitioners have not adequately established that $ 30,000 was, in fact, paid in 1976 to Kachuck for services rendered. First, it must be pointed out that the fact that this amount was included in Kachuck's income is not conclusive because its taxable year did not end until March 31, 1977, which means*435 that the payment could have been made either sometime in 1976 or in early 1977. In any event, there are a number of significant facts in the record from which we conclude that the $ 30,000 payment was not made in 1976. Mr. Kachuck was related to petitioners by marriage and had known them for approximately 29 years. Because of this close relationship, under the option note executed by petitioners, he had the unrestricted authority to borrow amounts and, in fact, he alone made all of the transactions recorded on the note. Mr. Kachuck testified at trial that a $ 50,000 payment he made on the note on February 4, 1976, was made, in large part, with corporate funds and that this was merely a "loan" to petitioners on which Kachuck would collect the interest. He then testified that this "loan" was later repaid by petitioners through subsequent advances under the note. Although we are not concerned herein with this "loan," what does concern us is whether the three corporate deposits he pointed to as payment for services rendered were, in fact repayments of the loan. While Mr. Kachuck testified, in effect, that most of the other corporate deposits that corresponded with advances under*436 the note represented loan repayments by petitioners, he was unable to conclusively state why these three particular deposits in three different months were made for a purpose that differed from the others. For this reason no inference can be drawn from advances on the note deposited to Kachuck's account that the funds were for Kachuck's use rather than to make investments or repay loans for petitioners. Overall, when the evidence upon which petitioners rely is compared with the other facts, the indication is contrary to petitioners' position. First, it seems totally inconsistent with Mr. Kachuck's position as an investment advisor to pay himself his fee not due until the end of December in three different amounts over the months of April through July 1976 when petitioners were charged interest on this money. Furthermore, the pencil entries next to the amounts on Kachuck's "ledgers" indicate that they were made at a later date and not on the dates of the advances. The indication is that the entries were made as a result of some later readjustment of accounts. Second, Mr. Kachuck's own conduct casts serious doubt on petitioners' position. In a letter dated December 15, 1976, Mr. *437 Kachuck wrote petitioners that $ 30,000 was due for professional services rendered during the calendar year 1976. This letter was essentially the same type as he sent to all of his clients each year and he regarded it as the official invoice for services rendered. When questioned about this letter at trial, Mr. Kachuck stated that he was ill during that year and that the letter was a mistake. However, in a letter dated January 15, 1977, Mr. Kachuck wrote petitioners that the $ 30,000 for services rendered was still owed to Kachuck. Both Mr. Kachuck and Mrs. Silver testified that they had a discussion on this matter after the December 15, 1976, letter was sent. However, the fact that the second letter was sent is a clear indication that any discussion must have taken place after that letter was sent. Mrs. Silver stated that, because of her illness and a family problem at the time, she was unclear as to her conversations with Mr. Kachuck. Dr. Silver did not testify. However, Mrs. Silver did testify that she conducted most of the dealings with Mr. Kachuck. Based on the two letters, we conclude that, while it might be possible that the first letter was a mistake, it is extremely*438 unlikely that the same mistake would have been repeated in a letter dated one month later, especially if the fee had been paid in July as petitioners contend. On the basis of the record as a whole, we conclude that petitioners did not pay Kachuck the $ 30,000 fee for services during the calendar year 1976 and whatever arrangements were made with respect to the fee were made after December 31, 1976. Decision will be entered for the respondent.Footnotes1. Marcia J. Silver was also known as Jane Silver.↩2. Although the stamped date was January 4, 1976, in fact, the correct date of payment as indicated on the note was January 4, 1977.↩3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩